SANOFI-AVENTIS v. APOTEX SANOFI-AVENTIS v. APOTEX I don't know if you noticed that our flags are at half staff today. The passing yesterday of Judge Dan Friedman, who is the Chief Judge of the Court of Claims and the only surviving member of the original judges of the Court of Appeals for the Federal Circuit. At age 95, he made a lifetime of contribution. But we mourn his passing, and we ask you to join us in a moment of silence. Thank you. We can proceed with the court's business, as Dan would want us, of course, to do. The first case today is number 2011-1048, SANOFI-AVENTIS v. APOTEX. Mr. Breisblatt. Robert Breisblatt Good morning, Your Honors. If it pleases the Court, my name is Robert Breisblatt from the law firm of Katten, Muchen, and Rozeman, and I represent both Apotex Corp and Apotex, Inc. in this appeal. I'm going to rely on our briefs for most of the issues, but what I'd like to focus on, unless the Court has some questions on them, is the prejudgment interest issue. And the issue there is, did the trial court error when it ordered on summary judgment the payment of over $107 million in prejudgment interest, particularly where there was an agreement between the parties that limited damages, and there was a statute that did not call for prejudgment interest? I think the first and most important thing is we have to look at the agreement between the parties, because that's what was negotiated. And the Court can find that agreement, I believe, in the record at A367 through A371. Isn't the problem how to overcome the usual rule of prejudgment interest? When there is a provision for damages, the amount of damages is sort of disputed, and so how do we overcome that inference? Well, there are two ways. The first, and I think the most important one, is that the signed agreement of the parties. It says damages, but it doesn't say no interest. Wouldn't that be appropriate? I would argue that the damages as it's used in that provision included, this was a 50% royalty, included prejudgment interest. And the parties did everything they could. When you look at the next sentence that particularly said no enhanced damages, to make sure that the only amount of money that would be due was the 50% of Apotex's net sales. And that's borne out by paragraph 10 of the agreement, which includes a very specific provision for interest. So where the parties intended to include interest, they included it, where they didn't, they didn't. You're saying that interest, excuse me, just to pursue the question. So you say we should view interest as enhanced damages under what, section 285? And that comes to our second portion. That 285 doesn't come into play here at all. That's what I would have thought would have been the intention of the parties in that statement that there'd be no enhanced damages. Well, the reason why 285, and that would include prejudgment interest if that's included something other than just regular damages. So I think that would take it out as well in the written agreement. The other part that takes it out is this case was brought under 35 USC 271E, which contains its own damage provision in E4, which does not call for prejudgment interest at all. And if we go back and look at the Supreme Court case in General Motors Company, they make it very clear that where Congress excludes some type of damage, it's excluded. And in that case, they were talking about 285 and why prejudgment interest was specifically included. When we look at section 274E4, we find that Congress specifically excluded all other forms of damages other than attorney's fees under 285. It says in C of 271E4C, damages or other monetary relief may be awarded against an infringer, and it tells under what circumstances. And then it says the remedies prescribed by subparagraph A, B, and C are the only remedies which may be granted by a court for an act of infringement described in paragraph 2. Before you move away from the settlement agreement, I want you to go back because I have a very basic question for you. Does your understanding of the word damages include all things that would be arguably within that umbrella? Meaning when they say actual damages, do you compensation in the form of a reasonable royalty in addition to prejudgment interest, any lost profits, any market reentry, whatever, the millions of different sorts of damages, different kinds of damages? Do you believe all of those things are encompassed by the settlement agreement's use of actual damages? Is that how I understand your argument? So when you said actual damages in the settlement agreement, that that encompasses anything that could be arguably entitled to in the form of damages. Correct. So your view is the words actual damages includes, you've already factored in prejudgment interest to the extent the parties wanted to have it. That's your view? Correct. And if you go back and look at the previous agreement that had been entered in February, the amount of damages was 70%. So these parties were negotiating. See, that's critical. What you just said is the amount of damages was 70%. And I think that very precisely states what I understand your argument to be. But when you first stood up, maybe you misspoke. You said the parties agreed that the reasonable royalty rate would be 50%. And that's why I'm asking you this question, because I don't see that the settlement agreement says 50% is the reasonable royalty as distinct from the full measure of damages. And I didn't think that's what you wanted to say. No, no, I misspoke, Your Honor. When I said that, whenever I see a percentage, I always equate it with a royalty rate. I didn't mean to say a reasonable royalty. What happened here is the parties agreed on the total amount of damages, which would include whether it was going to be lost profits, reasonable royalty, interest on whatever the judgment was, was all included under damages. And that was the purpose behind it. The goal of each party was to protect themselves in negotiating. Let's remember, at the time of this agreement, the validity of the patent hadn't been established yet. Apotex had approval to go to sale. This agreement contained two parts. The first part, if it had been accepted, was a royalty-free license that Apotex would have had beginning, I think, in actually this month, June of, well, last month, June of 2011, if the regulatory had approved it. And that was a pretty good agreement. No royalties to be paid, no damages. Apotex could go to sale. And the only competition they would be facing would be from an authorized generic, if there was going to be an authorized generic. This provision was to protect it if there was a failure and Apotex launched. They wanted to protect themselves from the amount of total damages they would be liable for, including any prejudgment interest. You know, when you negotiate at 50% and now you're actually, with $107 million, adding another 14% to it, we're redrafting the agreement. The agreement here was to protect Apotex, should it go to market, if there was regulatory deny. President, what about you? You pointed out the reference, when you were earlier, to the party that Sanofi wouldn't seek increased damages under Section 284. Now, Sanofi comes back, and I'm sure we'll hear from Mr. Chessler, that, well, that shows that when the parties wanted to exclude something that normally might be available under 284, they knew how to do so. But they didn't choose to exclude the prejudgment interest part of 284. What is your response to that? Well, then we're saying damages includes prejudgment interest, which is what we're saying the term here means. I mean, you can't have it both ways. You can't come back and say that the statement about 284 only included other enhancements to damages. I think we're saying that General Motors, again, says that prejudgment interest is the rule, not the exception. The Supreme Court, in viewing 284 in the GMC case, looked at the written statement that included prejudgment interest and said that was part of the damage calculation, because they wanted to make sure that the entity who had the rights to the patent received not only the dollar benefit of it, but the benefit of the money that they would have had had. They had a royalty starting at that point. This provision that was written by the parties, damages, included all of that. It was to make Sanofi whole completely should Apotex go to market. No additional damages. I mean, there's nothing more they could have said. Counsel, are you familiar with the case that Judge Newman referenced, General Motors versus DAVEC? I'm sorry, I missed that. Are you familiar with the Supreme Court case that Judge Newman referenced, General Motors versus DAVEC? I am. That's what I've been talking about. Well, I mean, I guess, but it said that the general rule is that prejudgment interest should be awarded. And I'm just wondering if you thought there was something more that that case should shed on this fight. Well, I think it does two things. One is, and this goes back to our argument on 271E and 271E4, what the Supreme Court said on page 653 is when Congress wished to limit an element of recovery in a patent infringement action, it said so explicitly. And that's what they did with 274E2, under which this case was litigated. So there's no prejudgment interest in that section. And Congress said that very specifically. It said these are the only remedies. I'm confused. You said the word damages includes prejudgment interest. 271E4 expressly, E4C, E4C, did I get that right? OK, expressly allows for the award of damages. So if the word damages includes prejudgment interest, why isn't it expressly allowing for the award of damages? But then if that includes- Sounds like you can't have it both ways. Well, actually, what I am arguing is if that term damages there includes prejudgment interest, then damages in the agreement included prejudgment interest. If the court is going to say no, damages doesn't include prejudgment interest, then that applies to 271E2 as well. If we're going to be consistent, it doesn't include damages. It doesn't include prejudgment interest in damages. Because when you look at 284, it explicitly says damages including prejudgment interest. OK, let's look at 284 to see if it explicitly says damages including prejudgment interest. Do you have your statute handy? Yes, I do. May I have a moment? It says damages together with interest and cost, doesn't it? Yes, together with interest and cost. So does that mean interest is a form of damages, or does it mean damages together with interest and cost? Because certainly you wouldn't argue that court costs are a measure of damages. No, but I would argue that interest is part of the damages that are talked about. If not- I had my Chicago manual style and my strunken whiteout, and I was analyzing this sentence over and over again. Because grammatically, what this sentence says is the claimant's damage is adequate to compensate for infringement, but no less than a reasonable royalty, together with interest and cost. The second sentence about reasonable royalties being set off by a comma before and a comma after actually means that damages is something different from interest and cost. I mean, it's just straightforward grammar, and I can't get around it. I don't know that it's what Congress intended, but it's grammatically what it says. What I'm doing is I'm going back and reading the GMC case where they talk about prejudgment interest being part of the damage calculation. That's where I'm taking it from. I understand what the court's saying with the way it's set out. You agree costs are not a measure of damages. I agree with you. So if costs are not a measure of damages grammatically, then the word interest can't be either, at least under 284. Trust me, I feel your pain. I'm all over on this back and forth, because the Supreme Court said in General Motors versus DevEx that damages include prejudgment interest. So they're talking about the patent statute. So I get it. And then if we go back, and if we say, and then I'm about ready to use up. You are using it up. Would you like to save the rest of your time? I think that we understand this particular focus. Although I want to ask Judge Schall, did you get an answer to your question? Yes, I would like to see it. Let's save the rest of your time, then, Mr. Brice-Black. Thank you. Mr. Chesler. Good morning, Your Honor. Because counsel's confined himself to the prejudgment interest issue, I will. Yes, you limit your reply to this issue. I will as well. Thank you, Your Honor. Well, I'd like to ask you one quick question apart from that. In your brief, you repeatedly say there's no right to a jury trial under 271E4C. But given that 271E4C affords actual monetary damages, I don't see how that's possible. The Seventh Amendment guarantees a right to a jury trial whenever monetary damages are at stake, so. It may have, that was our point, Your Honor. There was, the right doesn't arise because of that statute. The right arose as soon as they launched that risk, and we incurred monetary damages. Indeed, we were sitting there at the time wondering when they were going to ask for a jury, because remember, they had a judge who had already entered a preliminary injunction against them, which this court affirmed. We assumed they would ask for a jury. They had a right to ask for a jury. Oh, so you agree they had a right to a jury trial. Absolutely, under the Seventh Amendment. Okay, that's, I misunderstood then, go ahead. Sorry, let me turn then to pre-judgment interest. I would submit to this court that this is the sort of poster child case for the exercise of a district court's discretion to award pre-judgment interest. The whole point, as we understand it, of the General Motors rule and the reason for pre-judgment interest is to provide a vehicle to an injured plaintiff to recover not only the damages that it sustained by virtue of the conduct in question, but to compensate that injured plaintiff for the time it takes to then recover those damages. That's why courts award pre-judgment interest. And the reason I say that this case is the poster child for it is, we've been at this now for nine years. This lawsuit was filed nine years ago. It's been five years since Apotex launched in advance of a preliminary injunction hearing and a trial which took place about six months later. That infringement took place in August of 2006. We're still waiting. The money is now deposited finally with the clerk of the district court. We still haven't been paid. And of course now since judgment was entered, we're accruing a treasury bill rates because it's post-judgment interest. This is our fourth trip to this court, fourth time in this case. And there have been two re-examination petitions in the patent office. But you would agree, of course, that if the settlement agreement expressly said no pre-judgment interest, district court doesn't have the discretion to go ahead and award it anyway. Absolutely, Your Honor. And so I think their argument, as I understand it, is that the settlement agreement explicitly does say that when it says actual damages are limited to 50%. Right, and I want to turn to that now. I wanted the context of why we believe that this was an appropriate exercise of the district court's discretion. Now let me turn to the contract, if I may. If Your Honor looks at section 14 of the agreement, which is the section in question, I would ask the court to ask itself, what would the state of play have been in terms of our recover of monetary relief if there had been no section 14 at all? And the reason I ask you to ask yourself that question is because what we did in section 14 was an exercise in subtraction. We gave up. We limited our ability to recover. We didn't get anything that we weren't entitled to under the law. We, in fact, limited it. And we limited it in at least two ways. We capped the calculation of damages at 50% of the net sales of Apotex.  Based upon our lost profits, which would have been a larger number. And we also explicitly said that we will not seek increased damages under section 284. The parties were obviously aware of 284 because they explicitly carved out of the remedy to which we were titled under paragraph 14, the increased damages. We never said, and we're also not entitled to interest pursuant to 284. Well, they're saying the word actual damages would include everything to make the patentee whole from the infringement, which would include prejudgment interest. Now, see, treble damages are not to make the patentee whole. I mean, we know that. That's not a form of compensatory damages. So that's why, I mean, it clearly had to be separately carved out. It can't even arguably be encompassed by the words actual damages. That's true, Your Honor. But their argument is that the word actual damages includes both. But, Your Honor, I understand their argument. There's absolutely no basis for that whatsoever, none. The Supreme Court has repeatedly said in General Motors versus DevEx and other cases that actual damages, and they've actually used those words, quote, actual damages includes prejudgment interest. But, Your Honor, if that was the case, why wouldn't we give those interpretations? And they've said it in the context of the patent statute. So why wouldn't we give that interpretation to this language? Because, Your Honor, if that were the case, then when would you ever get prejudgment interest if you were, in fact, collecting your damages? You would always be deemed to have been given that remedy as part of your damage. And yet the statute says, 284 says, together with, as Your Honor pointed out in connection with your conversation with counsel, it doesn't say damages and not address interest. And 284 is the section that deals with damages. I mean, the two sections we're dealing with, 271 says infringement. It tells you what constitutes an infringement. Particularly for this purpose, it tells you that if somebody applies for an ANDA, that is an act of infringement under the statute. It also says that you're only entitled to equitable relief unless, in only one case, there is commercial activity in the marketplace, which would entitle you to damages. Otherwise, you're not entitled to it. It does not say how you measure. Is your 271E4, I'm switching gears because you just made me think of something. I'm sorry, I should let you finish. But 271E4, is your argument that that represents a safe harbor? That basically there is no actual monetary damage that is recoverable from the filing of an ANDA. It's only the filing of an ANDA in conjunction with 271A activity? If I understand your question, Your Honor, and I hope I do, the answer is yes. That is to say, when, for example, when the statute says the remedies prescribed by subparagraphs A, B, C, and D are the only remedies that may be granted, etc. I read that to say, for example, you cannot seek damages in connection with the act of filing the ANDA. Because C says, damages are, the lead in from 4 says, for an act of infringement described in paragraph 2, which, of course, would include the filing of an ANDA, and then you go down to C, damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, etc. So what it's saying is, only in the circumstances that were precisely involved here, which is to say, Apotex sold hundreds of millions of dollars worth of our patented product to the market in August of 2006, only in that circumstance, under the explicit language of 4C, are we entitled to seek damages. Nowhere does this section tell you how you calculate the damages, or what the measure of the damages is. For that, you go to the section of the statute, which is entitled, interestingly enough, damages. There's nothing in 284 that says it doesn't apply to a particular section of 271, or that it does apply only to a particular section of 271. It just says damages. And upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, comma, but in no event less than a reasonable royalty for the use made of the invention by the infringer, comma, what when I was an English teacher we called an appositive phrase. And then it picks up with the rest of the affirmative sentence. You were actually an English teacher? I was, yes, Your Honor. Many years ago, before you were born. But I was an English teacher many, many years ago. Together with interest and cause. In the South Bronx, by the way, New York. Together with interest and cause. That sheds a whole new light on it. They don't speak English in the South Bronx. Well, Your Honor, I was born in the Bronx. Well, I wouldn't have guessed. But anyway. Together with interest and cause, as fixed by the court. So my point, Your Honor, is very simple. The statutory scheme here, the statutory structure is pretty straightforward. You look to 271 to determine what is an infringement. You look to 271 to tell you what remedies you are entitled to in the particular instance of an infringement under Section 2. Our case is covered explicitly there. It's an ANDA. And it falls under the subsection C3, which says, and in a case involving an ANDA, where there's been commercial activity in the marketplace, and only in that case, you're entitled to damages. How do you know what the measure of damages is? You go to the section of the statute that's called damages, which is not limited in any way, shape, or form as to its applicability with respect to other sections of the statute. And it tells you quite clearly, in simple English, even in Bronx English, that it's to give the claimant damages adequate to compensate for the infringement, together with interest and cost. And I would submit to your honor to go back to Judge Moore's question. This statute is quite explicit. And I respectfully say to this court, the General Motors case simply should not, and I don't believe, can be properly read to say that it trumps the plain meaning of this statute, which was passed afterwards, I believe. It just says, and this happens in every case that I'm aware of, you find out what your injury is. The law tells you what your measure of damages is for that case, whether it's a contract case, and you're getting breach damages, or a tort case, and you're getting injury damages, or in this case, an infringement case, in which case you're getting 284 damages. And then the question is, how shall the court exercise its discretion to either award or not award prejudgment interest? And in this case, the trial court exercised its discretion to award it and to determine the rate at which it should be accumulated. And there's nothing unusual about it. There's nothing extraordinary about it. And I would submit there are thousands of patent cases that come before this court and the district courts in this country in which prejudgment interest is awarded every day. So the only conceivable argument that they have here, I would submit, is not that the statute doesn't permit it. When counsel said in his argument a few moments ago, we have a statute, quote, that does not provide for damages, I say respectfully, that's just flat out wrong. It explicitly provides for damages in precisely our case. The only question is whether the contract somehow changed that. And so again, let me turn with that back to the contract, because it's not the statute that gives them their remedy here. And I would submit to your honor that the contract doesn't either. First, as I said, section 14 is a subtraction section. It took things away. We agreed to limit our damages specifically as a matter of contract. That argument, you're suggesting that you somehow gave all of this away and didn't get anything. You got the certainty of the exact amount of damages. And conceivably, you saved your client a ton of money that would have been spent litigating whether you can successfully prove lost profits, paying the expert to do all that. Now, of course, you've turned around with this whole prejudgment interest. And they probably ended up paying nearly as much in lawyer fees as they would have anyway on it. But it didn't end up saving. The point is that the contract wasn't written with the clarity that you all hoped it would have been in terms of saving away from future litigation. Why wasn't that what you got out of it at the time you entered into it, was the certainty, the avoidance of litigation cost? Your honor, I'm not suggesting we gave something up gratuitously. This is a contract. It was a bargain. We gave and we got. So I'm not at all trying to suggest we didn't get things in exchange for limiting our damages. What I'm saying is what we did not limit, what we did not explicitly exclude, we have. And we still have. We had a statutory right under 284 to interest. There is no case cited to this court, none. And we couldn't find one, which says that in drafting a contract, you must explicitly recite all of the statutory rights that you are reserving your entitlement to under the contract. If that were the case, contracts would be loaded with addenda of all the statutes that the parties were not surrendering on. Is it your belief that the word damages includes interest or not? In the contract, absolutely not. What about in the statute? No, if you read 284, it says damages together with interest. So if the word damages doesn't include interest, then how do you get interest under 271E4, which expressly states that this shall be the sole remedies available and uses the word damages? Because, your honor, it doesn't tell you how to measure the damages. It just says you're entitled to damages. You have to look to the portion of the statute called damages, 284, which you would do under every section of this patent statute that relates to infringement. No, you just said 284. The word damages doesn't include interest. Yes. So if the word damages doesn't include interest, and this says the only thing you can get is damages. No, your honor, it doesn't. It says damages or other monetary relief. Or, in the alternative, my English teacher, disjunctive and conjunctives. Are you allowed to get damages and other monetary relief or damages or other monetary relief? Absolutely, you can get them both. You can get them both? Of course. Of course. And I hesitate to lecture the court on grammar, so I'm going to be very careful. But let me just answer your question. There are two forms of disjunctive phrases. We're going to have an English class here. There are exclusive disjunctives and non-exclusive disjunctives. Or is often used in common parlance between mean and or. Only when it's an exclusive disjunctive must you have a or b. And for example, very often in contracts, they will deliberately put a semicolon after a first phrase and then put the word or outside the semicolon and put a separately bracketed subsection letter, a or b, before the next phrase. Or is often used as a non-exclusive disjunctive. So then, under this logic, then you're saying you could have also gotten treble damages under 271E4C. But we excluded that, Your Honor, in the contract. No, no, no, no, no. We're talking about the statute. I'm asking you whether the statutory use of the word damages includes interest. Your argument to me is it includes everything in 284. 284 includes treble damages. I can't imagine how you could get treble damages under 271E4C, whatever. Well, Your Honor, it would depend, as you well know, in order to get treble damages, you have to meet a certain standard in order to increase your damages. Willful infringement, for example. It may well be that you could not demonstrate. Don't you always willfully file an ANDA? Yes. Is there any argument that you're not willfully doing it? Not that I can think of. So then you would always be entitled to treble damages under 271E4C in light of your English language construction of the word. No, Your Honor, I don't think so. Because under 4C is the only time that you can get damages in connection with an ANDA. It says only if there has been commercial manufacture, use, offer to sell, or sale with the United States, et cetera. So it would have to be the activity that is covered by 4C that would have to be willful. Because this statute plainly says the filing of an ANDA itself, while an act of infringement, only allows you to collect damages if there is marketplace commercial activity of the type described in 4C. So the fact that the filing of an ANDA is willful does not entitle you to willfulness damages. The activity in the marketplace, the commercial manufacture, use, offer to sell, et cetera, must be willful. Because that's the only, words of the statute, Your Honor, only circumstances in which you can get damages. So what I meant when I answered your question, so we're clear is, you file an ANDA, you're not entitled to treble damages for that. But suppose the activity in the marketplace thereafter constituted willful infringement of the patent. Just as it would in any other patent case which didn't involve an ANDA. Of course you could claim that you're entitled to treble damages, and you might or might not satisfy the willfulness standard. The statute covers it quite clearly. The problem is your interpretation has opened up the door to any form of monetary relief that the statute otherwise provides elsewhere to be swept into a 271E4C case. Despite the fact, I mean, I have to give some meaning to Congress's words. The remedies provided by subparagraphs A, B, C, and D are the only remedies that may be granted by a court for an act of infringement, except that you can award attorney's fees. That whole sentence would be unnecessary if I gave the preceding part the interpretation you wanted to have. No, Your Honor, respectfully. Because everything's already in it. No, Your Honor, respectfully, it's not. It's not. Let me give you a concrete example of what's not. Suppose you sought damages for injury that I sustained by virtue of your having filed your ANDA. You haven't done what Apotex did. You didn't launch at risk and go into the market and sell hundreds of millions of dollars of product in competition with mine. You didn't do that. You just filed an ANDA. What this statute plainly says is that you cannot collect damages that flow consequentially from the filing of an ANDA, because the only circumstance in which you can get damages in connection with an infringement that flows from an ANDA are the circumstances that are spelled out in simple English in 4C. And those do not include the filing of the ANDA. They only include commercial activity, manufacturer use, offer to sell, et cetera. So I say again, the congressional words of the statute plainly have meaning. They plainly have excluded any damages that are not the consequence of the commercial activity that The activity in which Apotex engaged here, for which we are seeking damages, is precisely the activity covered in C. And you have to look. Apotex, Inc. never did any of those things that you're talking about. So why should they be liable for damages? Not Apotex, Inc. Your Honor, they stipulated. Let me read you, if I may. This is at the record at 2498, at paragraph 5 of the record. They stipulated that Apotex Corporation is a subsidiary of Apotex, Inc. The acts of the corporation were at the direction of, with the authorization of, and with the cooperation, participation, and assistance of Apotex, Inc. We sued them for infringement. They never made a peep about not infringing. They had a judgment entered against both companies for infringement. They came up to this court and appealed that judgment. Never said a word about Inc. not being liable for damages. Not a word. If there's a rule of waiver in this country, they waived it when they appealed and never raised that issue. They raised it for the first time now. And they can't get around the stipulation that says that everything that happened here was under the direction of, and with the participation of, Inc. So they absolutely conceded infringement. You need to pursue this. We're running well over the time. I apologize. No, well, you were responsive to our questions. We have run over. So let's enlarge Mr. Bricelot's time as well. Oh, excuse me. I just wanted to make sure I understand. Your position is that 274, I'm sorry, 271E4C is sort of the doorway that gets you to 284 if there have been at-risk sales, correct? Yes, sir. OK. Now, I guess I'm inclined to agree with the general view of the statute that you've been propounding, that if there are sales that would be regular infringement in addition to what we call the artificial infringement of 271E2, the hatch-waxman, that then damages for those sales you look at under 284. But isn't it in this case, isn't it logical to think that if the parties had concluded that there was to be prejudgment interest, given the huge dollar amount that we're talking about here, that they would have specifically said something about it in the agreement? I think it comes, I agree with you. I think it comes down to the agreement. Yes. And Your Honor, our answer to that is absolutely not. We referred specifically to 284 in the agreement. We all knew quite well. We were pretty experienced lawyers on both sides. We referred to the very section of the statute that says damages together with interest and costs. We excluded the increased damages under that very same section of the statute. We said not a word about the interest question because we were not excluding that. The statute entitled us to it, we believe. It was the court's discretion to give it to us or not. The court exercised its discretion. And one last point. Counsel keeps referring to another section of the statute where we provided for interest. That was a section that dealt with the reimbursement for inventory. For inventory. There's no statute that says when someone destroys inventory on hand and is injured by that, that you will pay them interest. That's why we provided for interest under that section because there was no underlying statutory guarantee. What we're talking about here is infringement damages. That's what 284 deals with explicitly. And I say again and in conclusion, it is not the law that you must list every statute under which you're expressly retaining a right when you enter into a contract. If that were the case, contracts would be unwieldy. We're not obligated to do that. The law doesn't say we have to do that. And indeed, to the extent there's any law on the subject, I would refer the court to the Second Circuit decision in a case called Valley Disposal, 71 F3rd 1053, in which the court addressed that very issue and said, were they dismissed the case with prejudice? Excuse me. I don't want to jump in on you there, but time has passed, and we're a little bit fleeing. But I did want to ask one question. Is there anything in the record that we have before us that deals with what the party's discussions were prior to the contract? I know we have this memo that's in the record, and there's the declaration by Mr. Sherman, is it? Dr. Sherman. Dr. Sherman. Is there anything else in the record before us that reflects what the parties were saying about the question of prejudgment interest? Your Honor, I want to answer, because I always want to be sure I'm accurate in answers to questions. I don't believe so. As I stand here, I can't think of anything. I don't believe there is. But again, you can't create ambiguity in a contract by silence. The contract doesn't say we're excluding interest. And the statute said we're entitled to it. I'm just wondering if there was anything that would inform our understanding of what the term actual damages in paragraph 14 means. Not that I know of. And you'll notice that Dr. Sherman never says that he ever said a word to anybody about it. He said, that's what I was thinking. Well, that's what contracts are for. People think all sorts of things, and then they embody their agreement in a contract. And that's what happened here. OK. Thank you, Your Honor. Thank you, Mr. Chancellor. Mr. Bryce-Flatt, let's do the full rebuttal time, and we'll run over. I'll be quick, then. Let me start off by saying Sanofi wants damages interpreted different ways when they're using it. So the first thing they do is they say, no, no. In the agreement, it didn't include prejudgment interest. Damages there is very limited. We get down to 271E, under which they brought the case. And they say, there are no damages. It's expansive there. Let me ask you this. Assume for the moment we didn't have this settlement agreement here, and assume every other fact was the case, and that Apotex had gone ahead with its at-risk sales in August of 2006, and there had been a determination of infringement because of no invalidity, et cetera. Now, my view would be that under that circumstance, if there were damages, you would look to 284, wouldn't you? No. In fact, what would happen is what's happened in other cases. And that is, Sanofi would have been faced with the choice of amending the complaint and adding a 271A, B, or C claim, all of which would then have triggered 284. They didn't do that. They stayed with 271E, which has a very limited damage provision in C. And I don't know how one can get around the fact that Congress says the remedies prescribed by subparagraph A, B, and C are the only remedies which may be granted by a court for an act of infringement. But it does go on and say that if there has been commercial activity, that damages and other monetary relief were available. You're saying you can only avail yourself of that provision if you go ahead and file a complaint under A and B when there's been an at-risk sale? What I'm saying is if there's an at-risk sale, then what you do is you amend your complaint. And this goes back to one of the things Mr. Chesler alluded to when he indicated that Apotex, Inc. stipulated to infringement. They did under 271E, because they were the ones who filed the end. There was no dispute as to that. So that's the act of infringement they did. They didn't do any of the sales. But let's go back. So let me see. But doesn't the settlement agreement in paragraph 14 indicate that the parties contemplated that the possibility of at-risk commercial activity and that there was the expectation that you might be in a 270, you'd be in a 4C situation? What it contemplated was that if Apotex launched, the only damages, including pre-judgment interest, would be the 50% that was set out there. That's what the parties contemplated to make each other whole. That's why that provision is written there. And the reason for the 284 reference is the insurance policy, to make sure everyone understood that the only damages you were going to get was the 50%. Because 271E4 uses the word damages. That's where everyone was going. The word actual damages would be most likely analogized to compensatory, right? And increased damages is not a form of compensatory. So it's not really sort of icing on the cake, isn't it, a separate cake, the statement about increased damages under 284 not being allowed? It would be anything beyond what was damages. And so things like treble damages, things like interest, pre-judgment interest, are all add-ons, as the court noted when you read 284. Wait, it's an add-on, or it's part of the word actual damages? Because you've been telling me for the last half an hour that it's part of the word actual damages, so it's encapsulated. Right, and that's what I'm saying. In other words, I'm saying damages is used in the contract, included pre-judgment interest, and not anything else. I thought the court was now asking specifically about 284, I was commenting on your last sentence in the contract, where you further agrees it won't seek increased damages under section 284. So if anyone was going to look at anything beyond that which the parties had agreed to, they were doing everything they could to prevent it from being added to it. Treble damages, the contract is written under actual damages would include pre-judgment interest, so it wouldn't come in. They were trying to put belts and suspenders. The whole goal here was to limit the amount of liability that Apotex would be liable for to 50%, nothing more. Not pre-judgment interest, not enhanced damages, nothing more. That's how the agreement was written, that's what they were looking for, and that's what they thought they had. To what extent does your position depend upon the word actual in the contract? Would it be a different case if it just said damages instead of actual damages? No, I think the use of the word actual damages is, again, going to what we've said before, no enhancing of it. The actual damages would be everything the parties contemplated that Sanofi could claim at the time. Pre-judgment interest, lost profits, reasonable royalty, all was being rolled into a 50% number. So you're saying that actual does have some definite significance here. It might be a different case if the word actual wasn't in there. I don't know. That would have to be something that we'd have to discuss and contemplate. Any more questions? Any more questions? If the court has no more questions, I thank the court for giving me my additional time. Thank you, Mr. Braswack and Mr. Jensen. Case is taken under submission. Thank you, Your Honor.